**Ernest E. ADAMS, Plaintiff-Appellant,**

v.

**JOHNS–MANVILLE SALES CORPORATION, et al., Defendants-Appellees.**

No. 82–4550.

United States Court of Appeals,
Fifth Circuit.

Feb. 26, 1986.

Jane Saginaw, Brent M. Rosenthal, Russell W. Budd, Dallas, Tex., for plaintiff-appellant.

Thomas W. Davenport, Jr., Monroe, La., for Eagle-Picher.

George A. Weller, Beaumont, Tex., for Fibreboard Corp.

Dewey J. Smith, Monroe, La., for Celotex Corp.

Orgain, Bell & Tucker, John G. Tucker, Beaumont, Tex., William L. Brockman, Robert N. Ryan, New Orleans, La., for GAF.

Before CLARK, Chief Judge, GARZA, and JOLLY, Circuit Judges.

## ON PETITION FOR REHEARING

CLARK, Chief Judge:

This Louisiana diversity case was brought by Ernest Adams, a former commercial insulator. He seeks recovery for compensatory damages, for his increased risk of developing cancer and for his fear of contracting cancer, all of which allegedly resulted from his exposure to the defendant-manufacturers' asbestos products. The district court entered judgment in favor of the defendants on the basis of the jury finding that Adams did not sustain any injury.

We originally affirmed the jury verdict on appeal. *Adams v. Johns-Manville Sales Corp.*, 727 F.2d 533 (5th Cir.1984). We agreed to review the case on rehearing in light of the reversal of *Jackson v. Johns-Manville Sales Corp.*, 727 F.2d 506 (5th Cir.1984) and the decision to rehear that case en banc. Upon review, we certified two questions of Louisiana law to the Louisiana Supreme Court. *Adams v. Johns-Manville Sales Corp.*, 756 F.2d 1068 (5th Cir.1985). The Louisiana Supreme Court declined certification without discussion. *Adams v. Johns-Manville Sales Corp.*, 467 So.2d 529 (La.1985).

I

We have re-examined the record in this case in detail. At trial, Adams' medical expert, Dr. Eric Comstock, testified that Adams suffered from a progressive case of asbestosis. The defendants' expert, Dr. Arthur Tillinghast, testified that although Adams' lung X-rays revealed some calcification, scarring and a small amount of airway obstruction, Adams did not have an asbestos-related disease.

Comstock also testified before the jury that, in his opinion, Adams' chance of dying from an asbestos-related disease was far better than fifty per cent. This line of questioning stopped with this answer after objection. This testimony was the only evidence presented supporting Adams' contention that his chances of developing cancer were directly increased by his exposure to asbestos. The remainder of the evidence not only failed to indicate that Adams' exposure had not increased his risk of developing cancer, but it also strongly indicated that he had not contracted asbestosis. That evidence showed without dispute that when Adams was examined by Dr. Comstock in July 1980 and October 1981, and by Dr. Tillinghast in February 1982, he had not complained regularly of shortness of breath, chest pain or cough, symptoms normally associated with asbestosis. On isolated occasions Adams had experienced shortness of breath but he attributed that to lack of physical conditioning. He was able to participate in athletic competitions for the two years preceding the trial, in

which he played volleyball, touch football and ran a mile and a quarter. Adams was forty-seven years old at the time of trial and, by his own admission, overweight. He smoked one and a half packs of cigarettes a day for ten years and then smoked and inhaled fifteen cigars a day from 1963–1979. There was testimony that his pulmonary function studies were within normal limits for his age and that the shortness of breath he complained of at trial could be due as much to his age, weight and smoking history as to any manifestation of asbestosis.

In the following words the trial court excluded all evidence of Adams' alleged increased risk of cancer and mental anguish resulting from that increased risk based upon a lack of proof of medical probability that Adams would contract cancer in the future:

> Plaintiff Adams does not now have cancer and by whatever definition plaintiff wishes to use, any reference that he may or might have cancer in the future is only a possibility. There can be no causal link with an injury when that injury hasn't yet occurred so ... I stand by the ruling I made at the pretrial conference that no evidence regarding cancer will be submitted to this jury ...

On rehearing Adams argues that the trial court erred in excluding evidence of his increased risk of developing cancer. He submits that cancer evidence is fully admissible both to establish the future consequences of his present condition and to prove his present mental anguish under Louisiana law.

## II

In the first *Adams* opinion, we affirmed the trial court's exclusion of cancer evidence because Adams made no claim that he had cancer. We determined, based on *Jackson v. Johns-Manville Sales Corp.*, 727 F.2d 506 (5th Cir.1984), that "the requisite element of causation is lacking until separate prospective injuries materialize." *Adams*, 727 F.2d at 537. That decision was supported by Louisiana case law. *See R.J. Reynolds Tobacco Co. v. Hudson*, 314 F.2d 776 (5th Cir.1963); *Delaughter v. The Borden Co.*, 364 F.2d 624 (5th Cir.1966); *Dean v. Hercules, Inc.*, 328 So.2d 69 (La. 1976); and *Bordelon v. Crutcher*, 430 So.2d 1107 (La.App.1983). Although the en banc court has recently determined that recovery for the possibility of an increased risk of cancer is permissible under Mississippi law, *Jackson v. Johns-Manville Sales Corp.*, 781 F.2d 394 (5th Cir.1986), that decision was explicitly premised (1) on Mississippi law and (2) on the fact that Jackson established that he will probably develop cancer.

We must interpret and apply the law as it exists in Louisiana to the distinctly different facts developed in the case at bar. Adams argues that the law in this area has been clarified since the conclusion of this trial. He contends that *Gideon v. Johns-Manville Sales Corp.*, 761 F.2d 1129 (5th Cir.1985) and *Martin v. City of New Orleans*, 678 F.2d 1321 (5th Cir.1982) require reversal of our initial ruling on the admissibility of cancer evidence to establish the future consequences of Adams' present condition. Although *Gideon* was based on an application of Texas law, Adams finds it dispositive of this case because Texas, like Louisiana, does not permit the splitting of tort claims.[1]

Adams' reliance on *Gideon* is not well-taken for two reasons. First, although *Gideon* did allow recovery for fear of future conditions that will develop from a presently existing injury, Gideon proved

---

1. Adams' supplemental brief continues to urge that *Martin* indicates this Circuit's "tacit acknowledgment" that Louisiana law would allow recovery for future complications from a present injury because Louisiana "does not tolerate claim splitting." Our initial response to this argument remains valid:

> *Martin* is inapposite to the case at bar. In *Martin*, the issue was the excessiveness of a jury verdict. We held that the evidence was sufficient to justify the award. We did not rule on the propriety of the trial court's admission of testimony regarding the risk of future complications.
> *Adams*, 727 F.2d at 538.

that he had asbestosis, a presently existing injury. Adams, on the other hand, was not able to prove such a condition to the jury's satisfaction. Second, *Gideon* required evidence that the future condition will develop from the presently existing injury as a medical probability. Adams did not prove or offer to prove that there was a medical probability that he will contract cancer from asbestos exposure.

The preliminary conference between the court and counsel is not a part of the record on appeal. The burden of presenting an adequate record on appeal is on the appellant. Fed.R.App.P. 10(b)(2). We do know from the record, however, that the trial court made a preliminary ruling that Adams would not be allowed to offer evidence relating to cancer. If Adams wished to demonstrate that this ruling was erroneous he should have proffered evidence that would prove that defendants' actions probably increased *his* risk of developing cancer and that *he* presently feared that probability. Fed.R.Evid. 103(a)(2).

Adams' proffer consisted of admittedly "sketchy" testimony to be given by a Dr. Joseph Wagoner. It stated Dr. Wagoner would rely on an article published in the British Journal of Industrial Medicine. The article studied asbestos workers certified as having asbestosis and followed the progression of their disease and the cause of death. The article then deduced that increases in risk of cancer for such workers correlated with percentages of disablement suffered by such workers. The proffer, however, failed to indicate that Adams could prove he suffered any percentage of disablement from inhalation of asbestos fibers which would establish the probable risk of cancer Dr. Wagoner would fix for Adams. The second part of Adams' proffer was a statement that Dr. Comstock would testify "concerning the increased risk of cancer of an insulator with Mr. Adams' record of exposure to asbestos and Mr. Adams' record of smoking cigarettes." Again the proffer was left in general terms never made specifically applicable to Adams in terms of medical probability.

■ This tender was insufficient to show that the trial judge's ruling was erroneous. It failed to establish that exposure to defendants' products probably caused an increased risk of cancer in Adams. No proffer or proof in any other part of the record indicated that Adams, who lacked normally present asbestosis symptoms, who at age 47 was able to participate in strenuous athletic competition, who had been a heavy smoker, and who did not have cancer, probably had an increased risk of contracting cancer in the future. The proffer of abstract statistics and generalizations do not suffice to demonstrate that the decision of the trial court to exclude evidence of cancer was an abuse of discretion.

### III

Adams also contends that the cancer evidence should have been admitted to prove that he suffered present mental anguish resulting from his increased risk of cancer. At the outset we note that there was no proffer whatsoever of evidence that Adams feared the manifestation of cancer as a result of his exposure to asbestos. "The propriety of a decision to exclude evidence will not be reviewed if an offer of proof was not made at trial." *United States v. Vitale*, 596 F.2d 688, 690 (5th Cir.1979).

In the first *Adams* opinion, we recognized that the trial court did not expressly weigh the probative value of the evidence of mental anguish as opposed to the harm likely to result from its admission in accordance with Fed.R.Evid. 403. We decided not to remand the action on this one aspect, however, because we affirmed the trial court in every other regard. Adams asserts that this decision should now be reconsidered because Louisiana law allows recovery for a plaintiff's reasonable fear of future injury. He cites *Anderson v. Welding Testing Laboratory, Inc.*, 304 So.2d 351 (La.1974) as authority for the proposition that Louisiana law recognizes that the fear of cancer, even if the possibility of developing the disease is remote, is a cognizable aspect of a present cause of action for mental anguish. In *Anderson*, a weld-

er injured his hand through radiation exposure. He brought suit to recover for his present physical injuries and also sought damages for his fear of developing cancer in the future as a result of his exposure to the radiation. The Louisiana Supreme Court affirmed the award of damages for present mental anguish arising from an increased risk of cancer. In a similar case, a Louisiana appeals court affirmed a damage award based on a present fear of experiencing future epileptic seizures even though the plaintiff did not have epilepsy. *Heider v. Employers Mutual Liability Insurance Company of Wisconsin,* 231 So.2d 438 (La. 4th DCA 1970).

■ Adams' reliance on these cases is misplaced. Each affirms an award for mental anguish caused by a physical injury proven to exist. The jury in this case concluded that Adams did not sustain an injury. He cannot predicate error on the court's refusal to allow him to prove fear of a complication from an injury that the proof does not show he ever suffered. Nor is a litigant entitled to adduce proof that he fears complications in the hope it will sway the jury to find that the underlying injury exists.

Adams contends that Louisiana law does not require a physical injury as a predicate for recovering for mental anguish. He refers us to *Chappetta v. Bowman Transportation, Inc.,* 415 So.2d 1019 (La.App. 1982); *Badgett v. Keith,* 415 So.2d 337 (La.App.1982); *Carroll v. State Farm Ins. Co.,* 427 So.2d 24 (La.App.1983); *Johnson v. Best Manufacturing Co.,* 263 So.2d 436 (La.App.1972); and *Collins v. Lefort,* 210 So.2d 895 (La.App.1968). This contention is incorrect. These cases do not establish a Louisiana rule allowing recovery for mental anguish notwithstanding the lack of injury. While it is true that they allowed recovery for mental anguish engendered by a proven traumatic ordeal which did not result in physical injury, the cases do not recognize any right of recovery for mental anguish arising from fear of future complications from an unproven event. Adams' case failed because he did not prove that he

sustained an injury resulting from his exposure to asbestos products.

■ Finally, even if we were to assume that the trial court's exercise of discretion to exclude evidence of present mental anguish caused by fear of increased risk of cancer was error, the result was not "inconsistent with substantial justice" and thus would be harmless. Fed.R.Civ.P. 61.

IV

■ Adams finally contends that evidence of an asbestos worker's increased risk of developing cancer should be admissible to establish the asbestos manufacturers' liability. This argument lacks merit. The appellee manufacturers' products were found by the jury to be defective, albeit not a legal cause of injury to Adams. Thus, the refusal to admit evidence of cancer to establish liability could not have affected any substantial right in Adams' case. On this basis also, any assumed error is harmless. Fed.R.Civ.P. 61; *Crumpton v. Confederation Life Ins. Co.,* 672 F.2d 1248 (5th Cir.1982).

The petition for rehearing is
DENIED.