**Clifford WILTZ, et al.**

v.

**MOBIL OIL EXPLORATION & PRO-
DUCING NORTH AMERICA,
INC., et al.**

Civ. A. No. 86–3215–O.

United States District Court,
W.D. Louisiana,
Lafayette/Opelousas Division.

Jan. 5, 1989.

Guidry & Guidry, Edmond L. Guidry, III,
Daniel G. Guidry, St. Martinville, La., for
plaintiffs.

David S. Cook, Professional Law Corp.,
Mark B. Oliver, Lafayette, La., for inter-
venor.

Hugh E. McNeeley, Lafayette, La., for
Roxanne B. Wiltz.

Liskow & Lewis, Charles M. Steen, Pat-
rick W. Gray, George Arceneaux, III, La-
fayette, La., for Mobil Oil.

Onebane, Donohoe, Bernard, Torian,
Diaz, McNamara & Abell, Timothy J.
McNamara, Suzanne M. Jones, Lafayette,
La., for GM Corp.

## RULING

NAUMAN S. SCOTT, District Judge.

This matter is now before us on a Motion
for Summary Judgment filed by defendant,
Mobil Oil Exploration & Producing North
America, Inc. (MEPNA).

This action arises out of a flash fire
accident which occurred on June 23, 1986 at
an oil well site owned by MEPNA located
in Pointe Coupee Parish near Krotz
Springs, Louisiana. On that date, Clifford
Wiltz, Raymond Broussard, Sr., Raymond
Broussard, Jr., and Terry DeJean (plain-
tiffs) were working at the well site pursu-
ant to their employment with Acadiana
Workover Service, Inc. (Acadiana). Acadia-
na had been hired by MEPNA to perform
workover operations on the well beginning
that day. During the course of the work-
over operations a flash fire ignited near
Acadiana's mud tank and caused injury to
plaintiffs.

By their Fifth Supplemental and Amend-
ing Complaint, plaintiffs seek exemplary
damages from MEPNA pursuant to La.
C.C. art. 2315.3, which provides as follows:

In addition to general and special dam-
ages, exemplary damages may be award-
ed, if it is proved that the plaintiff's
injuries were caused by the defendant's
wanton or reckless disregard for public
safety in the storage, handling or trans-

portation of hazardous or toxic substances.

Defendant MEPNA now moves for summary judgment on the grounds that plaintiffs have not shown that MEPNA's activities fall within the scope of the statute. Although MEPNA urges its motion on three different grounds, we find it necessary to address only two of these arguments.

■ First, MEPNA argues that its conduct did not exhibit a "wanton or reckless disregard for public safety." We agree. As the Louisiana Fourth Circuit Court of Appeal recently explained, in discussing article 2315.3, such conduct "is accompanied by a conscious indifference to consequences, amounting almost to a willingness that harm should follow." *Griffin v. Tenneco Oil Co.*, 531 So.2d 498, 501 (La.App. 4th Cir.1988), quoting *Cates v. Beauregard Electric Cooperative, Inc.*, 316 So.2d 907, 916 (La.App. 3rd Cir.1975). The evidence makes it clear that the procedure employed on this job was customary for such work. Additionally, it has been established that plaintiffs knew of the possible presence of gas at the well. Thus, the conduct of MEPNA in allowing or instructing plaintiffs to conduct the workover operations in a customary manner cannot constitute wanton or reckless behavior subjecting MEPNA to exemplary damages.

Second, MEPNA argues that as the owner and operator of the well it was not engaged in storing, handling or transporting hazardous or toxic substances as required by article 2315.3. As a provision authorizing punitive damages, article 2315.3 must be strictly construed. *Williams v. Industrial Helicopters, Inc.*, 519 So.2d 1180 (La.App. 3rd Cir.1988); *Jordan v. Stevens Forestry Services, Inc.*, 430 So.2d 806 (La.App. 3rd Cir.1983). Therefore, we must find that MEPNA engaged in storing, handling or transporting a hazardous or toxic substance in order to find liability under this statute.

■ As the operator of the well, MEPNA was not engaged in storing, handling or transporting hazardous or toxic substances. Implicit in storing, handling or transporting is the requirement that the hazardous substance be in the possession and control of a person who then handles or otherwise deals with that substance. *See also* Louisiana Mineral Code, art. 7 ("Minerals are reduced to possession when they are under physical control that permits delivery to another."). It is clear that MEPNA did not exercise control over the gas in this case. The accident was caused by emissions from the well, of naturally occurring gas from an underground formation, which had never been reduced to possession by MEPNA or any other person or entity. Louisiana law provides that a person does not acquire ownership or other dominion over fugacious minerals until they are reduced to possession. *See* Comment, Louisiana Mineral Code, art. 5; Louisiana Mineral Code, art. 6. A mere showing that MEPNA produced natural gas from the well in the past is not sufficient to subject it to liability under article 2315.3. The gas in this case had never been reduced to possession by MEPNA or anyone else; therefore, MEPNA could not be said to have been storing, handling or transporting the gas.

Having found that MEPNA's conduct was not wanton or reckless and that MEPNA was not storing, handling or transporting natural gas, MEPNA's Motion for Summary Judgment is GRANTED.

DONE AND SIGNED.